# No. 14-90018

IN THE

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

=====================================

## ELOY ROYAS MAMANI, ET AL.,

*Plaintiffs and Respondents,*

*v.*

## JOSE CARLOS SÁNCHEZ BERZAÍN AND GONZALO SÁNCHEZ
## DE LOZADA SÁNCHEZ BUSTAMENTE,

*Defendants and Petitioners.*

=====================================

ON PETITION FOR CERTIFICATION FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
HON. JAMES I. COHN, J., JUDGE
CASE NOS. 07-22459 & 08-21063

=====================================

## OPPOSITION TO PETITION FOR CERTIFICATION UNDER
## 28 U.S.C. § 1292(b)

=====================================

**CENTER FOR CONSTITUTIONAL
RIGHTS**
JUDITH BROWN CHOMSKY
POST OFFICE BOX 29726
ELKINS PARK, PA  19027
TELEPHONE: (215)782-8367

**AKIN GUMP STRAUSS
HAUER & FELD LLP**
STEVEN H. SCHULMAN
1333 NEW HAMPSHIRE AVENUE NW
WASHINGTON, D.C.  20036
TELEPHONE:  (202) 887-4000
FACSIMILE:  (202) 887-4288

ATTORNEYS FOR PLAINTIFFS AND RESPONDENTS,
**ELOY ROYAS MAMANI, et al.**

(COUNSEL LIST CONTINUED ON NEXT PAGE)

**CENTER FOR CONSTITUTIONAL RIGHTS**
BETH STEPHENS
666 BROADWAY, SEVENTH FLOOR
NEW YORK, NY 10012
TELEPHONE: (212) 614-6431

**AKIN GUMP STRAUSS HAUER & FELD LLP**
MICHAEL C. SMALL
JEREMY F. BOLLINGER
JONATHAN P. SLOWIK
2029 CENTURY PARK EAST
SUITE 2400
LOS ANGELES, CA 90067
TELEPHONE: (310) 229-1000
FACSIMILE: (310) 229-1001

**KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP**
DAVID RUDOVSKY
718 ARCH STREET, SUITE 501 SOUTH
PHILADELPHIA, PA 19016
TELEPHONE: (215) 925-4400

**SCHONBRUN, DE SIMONE, SEPLOW, HARRIS & HOFFMAN, LLP**
PAUL HOFFMAN
723 OCEAN FRONT WALK
VENICE, CA 90201
TELEPHONE: (310) 396-0731

**INTERNATIONAL HUMAN RIGHTS CLINIC,**
**HARVARD LAW SCHOOL**
TYLER R. GIANNINI
SUSAN H. FARBSTEIN
6 EVERETT STREET, THIRD FLOOR
CAMBRIDGE, MA 02138
TELEPHONE: (617) 495-9362

## CERTIFICATE OF INTERESTED PERSONS

Counsel for Plaintiffs-Respondents certifies that all parties to this appeal are natural persons, and thus no entity owns 10% or more of the stock of any party. Pursuant to 11th Cir. R. 26.1-1, the following persons have or may have an interest in the outcome of this case or appeal:

Ahmad, N. Mahmood (counsel for Petitioners)

Akin Gump Strauss Hauer & Feld LLP (Counsel for Respondents)

Apaza Cutipa, Hernan (Respondent)

Baltazar Cerro, Teofilo (Respondent)

Bernabe Callizaya, Hermogenes (Respondent)

Bollinger, Jeremy F. (counsel for Respondents)

Center for Constitutional Rights (counsel for Respondents)

Chomsky, Judith Brown (counsel for Respondents)

Cohn, The Honorable James I. (Southern District of Florida)

Dershowitz, Alan M. (counsel for Petitioners)

Dorta & Ortega, P.A. (counsel for amici curiae)

Downey, Kevin M. (counsel for Petitioners)

Espejo Villalobos, Sonia (Respondent)

Farbstein, Susan H. (counsel for Respondents)

Fried, Frank, Harris, Shriver &Jacobson LLP (counsel for amici curiae)

Giannini, Tyler Richard (counsel for Respondents)

Goldsmith III, Jack Landman (counsel for Petitioners)

Goldstein, Glenn E. (counsel for Petitioners)

Greenberg Traurig, LLP (counsel for Petitioners)

Greenblum, Benjamin M. (counsel for Petitioners)

Hansen, Eugene N. (counsel for amici curiae)

Hillson, Greg S. (counsel for Petitioners)

Hoffman, Paul L. (counsel for Respondents)

Huanca Quispe, Felicidad Rosa (Respondent)

International Human Rights Clinic of Human Rights Program, Harvard Law

School (counsel for Respondents)

Jordan, The Honorable Adalberto (then Southern District of Florida)

Kairys, Rudovsky, Messing & Feinberg LLP (counsel for Respondents)

Kurzban Kurzban Weinger Tetzeli &Pratt P.A. (counsel for Respondents)

Kurzban, Ira Jay (counsel for Petitioners)

Mamani Aguilar, Gonzalo (Respondents)

McAliley, Magistrate Judge Chris Marie (Southern District of Florida)

Ortega, Omar (counsel for amici curiae)

Owen, Roberts B. (amicus curiae)

Pedrosa, Eliot (counsel for Petitioners)

Polebaum, Elliot E. (counsel for amici curiae)

Ramos Mamani, Etelvina (Respondent)

Reyes, Ana C. (counsel for Petitioners)

Robinson, Davis R. (amicus curiae)

Rojas Mamani, Eloy (Respondent)

Rossi, Ian M. (counsel for Petitioners)

Rudovsky, David (counsel for Respondents)

Sánchez Berzaín, José Carlos (Petitioner)

Sánchez de Lozada Sánchez Bustamante, Gonzalo (Petitioner)

Schnapp, Mark Paul (counsel for Petitioners)

Schonbrun DeSimone Seplow Harris & Hoffman LLP (counsel for Respondents)

Schulman, Steven H. (counsel for Respondents)

Seltzer, Magistrate Judge Barry S. (Southern District of Florida)

Shanmugam, Kannon K. (counsel for Petitioners)

Slowik, Jonathan P. (counsel for Respondents)

Small, Michael C. (counsel for Respondents)

Sofaer, Abraham D. (amicus curiae)

Stephens, Beth (counsel for Respondents)

Stewart, Beth A. (counsel for Petitioners)

Taft, IV, William (amicus curiae)

Valencia de Carvajal, Juana (Respondent)

Williams & Connolly LLP (counsel for Petitioners)

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION............................................................................................. 1

STATEMENT OF THE CASE.......................................................................... 2

      A.    Statement of Facts .................................................................... 2

      B.    Procedural Posture .................................................................. 7

ARGUMENT ................................................................................................... 10

I.     THE ISSUE OF COMMAND RESPONSIBILITY IS
       INAPPROPRIATE FOR INTERLOCUTORY REVIEW
       BECAUSE IT ADDRESSES THE APPLICATION OF
       SETTLED LAW TO FACT ............................................................ 11

II.    THE EXHAUSTION QUESTION IS INAPPROPRIATE FOR
       INTERLOCUTORY REVIEW BECAUSE THERE IS NO
       SUBSTANTIAL GROUND FOR DIFFERENCE OF
       OPINION ......................................................................................... 15

CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Access Now, Inc. v. Southwest Airlines Co.*,
385 F.3d 1324 (11th Cir. 2004) ........................................................................ 12

*Adams v. Florida Power Corp.*,
255 F.3d 1322 (11th Cir. 2001) ........................................................................ 16

*Amos v. Glynn County Board of Tax Assessors*,
347 F.3d 1249 (11th Cir. 2003) ........................................................................ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................... 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007) .......................................................................................... 7

*Camacho v. P.R. Ports Auth.*,
369 F.3d 570 (1st Cir. 2004) ............................................................................ 11

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) .......................................................................................... 10

*Ford v. Garcia*,
289 F.3d 1283 (11th Cir. 2002) .............................................................. 1, 8, 11

*Hilao v. Estate of Marcos*,
103 F.3d 767 (9th Cir. 1996) ............................................................................ 11

*In re Celotex Corp.*,
No. 8:90-bk-10016-PMG, 2010 WL 2871075 (M.D. Fla. July 20, 2010) ........ 15

*In re Flor*,
79 F.3d 281 (2d Cir. 1996) ............................................................................... 15

*In re Miedzianowski*,
735 F.3d 383 (6th Cir. 2013) ............................................................................ 16

*In re Pac. Forest Products Corp.*,
335 B.R. 910 (S.D. Fla. 2005) ................................................................... 15, 17

*Jean v. Dorelien,*
431 F.3d 776 (11th Cir. 2005) ............................................................. 19

*Kiobel v. Royal Dutch Petroleum Co.,*
133 S. Ct. 1659 (2013) .......................................................................... 8

*Laperriere v. Vesta Ins. Group, Inc.,*
526 F.3d 715 (11th Cir. 2008) ............................................................. 16

*Mamani v. Berzain,*
654 F.3d 1148 (11th Cir. 2011) ............................................................. 7

*McFarlin v. Conseco Services, LLC,*
381 F.3d 1251 (11th Cir. 2004) ........................................................... 10

*Nicholson v. Shafe,*
558 F.3d 1266 (11th Cir. 2009) ........................................................... 20

*OFS Fitel, LLC v. Epstein, Becker & Green, P.C.,*
549 F.3d 1344 (11th Cir. 2008) ........................................................... 10

*Paul v. Avril,*
812 F. Supp. 207 (S.D. Fla. 1993) ...................................................... 12

*Rindfleisch v. Gentiva Health Services, Inc.,*
— F. Supp. 2d —, 2013 WL 8541675 (N.D. Ga. Nov. 4, 2013) ....................... 15

*Smith v. Laddin,*
424 B.R. 529 (N.D. Ala. 2010) ........................................................... 15

*Trauner v. State Bank & Trust Co.,*
No. 1:12-cv-03761-JEC, 2013 WL 5350611 (N.D. Ga. Sept. 23, 2013) .......... 17

*United States v. One Parcel of Real Prop. With Bldgs., Appurtenances & Improvements,*
767 F.2d 1495 (11th Cir. 1985) ........................................................... 10

*Walker v. Jones,*
10 F.3d 1569 (11th Cir. 1994) ............................................................. 12

*Woodford v. Ngo,*
548 U.S. 81 (2006) ............................................................................ 18

**STATE CASES**

*In re Checking Account Overdraft Litig.*,
    No. 09-MD-02036-JLK, 2010 WL 3377592 (S.D. Fla. July 1, 2010) .............. 15

**FEDERAL STATUTES**

28 U.S.C. § 1292(b) .......................................................................... 10, 20

28 U.S.C. § 1350 n. , § 2(a)..................................................................... 17

Torture Victim Protection Act, 28 U.S.C. § 1350 ................................................ 2, 3

**OTHER AUTHORITIES**

74 Am. Jur. 2d *Torts* § 2 (2014)............................................................... 18

S. Rep. 102-249 (1991) ....................................................................... 8, 17

*Interhandel (Switzerland v. United States),*1959 I.C. J. 6 (March 21). .................. 18

W. Casto, *The New Federal Common Law of Tort Remedies for Violations
    of International Law*, 37 Rutgers L. J. 635, 660 (Spring 2006) ........................ 18

## INTRODUCTION

Plaintiffs are the family members of eight unarmed Bolivian citizens intentionally killed by the Bolivian military in 2003 pursuant to a preconceived plan masterminded by Defendants, the former President and former Minister of Defense of Bolivia.  The Second Amended Consolidated Complaint ("Complaint") alleges that, before taking office, Defendants agreed upon a systematic and lethal plan to kill as many as 3,000 civilians in order to prevent and suppress opposition that might block their unpopular economic programs.  The deaths of Plaintiffs' family members were the intended and direct result of that plan, conceived, ordered, and implemented by Defendants, pursuant to which military sharpshooters under their command repeatedly shot and killed or injured civilians in multiple locations in Bolivia over many weeks.

In their petition for interlocutory appeal, Defendants claim that the law defining command responsibility is not clear.  However, the law applicable in this case is not in doubt.  The District Court applied this Court's decision in *Ford v. Garcia*, 289 F.3d 1283 (11th Cir. 2002), which states the three required elements of command responsibility, and held that the Complaint alleges specific facts that plausibly show that Defendants' conduct satisfied each element.  In short, this case merely involves the application of settled command responsibility law to facts, and thus is inappropriate for interlocutory appeal.

1

Defendants also urge review of the District Court's holding that humanitarian assistance payments Plaintiffs received from the Bolivian government do not bar Plaintiffs' claims under the Torture Victim Protection Act, 28 U.S.C. § 1350 (note) ("TVPA"). Resolution of this issue would not dispose of the case, however, because if this Court were to conclude that third-party payments could have preclusive effect, it would leave open the question of whether the payments here offered an "adequate" remedy sufficient to preclude the TVPA claims. But even if divorced from unresolved factual issues about the adequacy of any assistance received by the Plaintiffs, the narrow legal question on the preclusive effect of the assistance is inappropriate for interlocutory appeal because there are no contrary judicial decisions, and the District Court Order is based on a comprehensive review of the governing statute, its legislative history, and the relevant international and domestic law precedents. The mere fact that Defendants' novel interpretation of the TVPA creates an issue of first-impression is not sufficient to justify interlocutory review.

## STATEMENT OF THE CASE

### A.    Statement of Facts

As the District Court concluded,[1] the Complaint plausibly alleges that: (1)

---

[1] The facts summarized here are drawn from the fact section of the District Court Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (at 3-11) (Tab B to Defendants' Petition [hereinafter "Order"]), which the District Court,

2

Defendants agreed in advance to an explicit plan to use unlawful military force against peaceful civilians as a means to deter political protests; (2) Defendants changed the governing military rules to authorize the unlawful use of maximum military force against civilians; (3) in an effort to justify the use of deadly military force against civilians, Defendants repeatedly falsely stated that armed insurgents were operating in Bolivia, although they knew that was untrue; (4) between September 20 and October 13, armed forces under Defendants' command implemented their plan by repeatedly and unlawfully shooting at unarmed civilians who posed no threat, killing dozens of civilians, including Plaintiffs' family members, and injuring hundreds more; and (5) when informed of civilian deaths and injuries, Defendants repeatedly acknowledged that the military was acting under their command and that they bore responsibility for the military's actions.

Shortly before taking office in 2002, Defendants met and discussed how prior Bolivian governments had retreated from unpopular economic proposals in the face of widespread protests. Order at 3-4. Knowing that their own economic program would be unpopular, Defendants explicitly agreed to use systematic,

in turn, "derived from the non-conclusory factual allegations in the Complaint, . . . accept[ed] as true" for the purposes of the Motion for Dismiss. *Id*. at 3 n.2. Defendants' Petition is rife with unsupported factual assertions that conflict with the District Court's statement of the well-pleaded, plausible allegations of the Complaint. For example, contrary to Defendants' presentation of the case, Plaintiffs do not challenge Defendants' "political decisions" or their use of force in response to "civil unrest," Pet. at 1, and there were no "armed insurgents" in Bolivia at the time of the events at issue in this case, Pet. at 3.

unlawful, lethal force against civilians to quash and deter opposition to their

policies. Indeed, Defendants stated that they might need to kill as many as 3,000

people in order to sufficiently silence protesters. *Id.* at 4-5. Once in office,

Defendants set the foundation for implementing their plan by adopting new

military regulations that authorized the use of "maximum combat force" against

civilian protestors. *Id.* at 5 n.6.

When protests began in February 2003, Defendants responded with military

force, leading to dozens of deaths and hundreds of injuries. *Id.* at 5-6. Over the

ensuing months, numerous people warned the Defendants that use of unlawful

military force against civilians would lead to numerous deaths. Defendants refused

to change course and continued to debate how many killings would be necessary to

quell popular protests. *Id.* at 6.

In early September 2003, in response to peaceful protests, Defendant

Berzain set up a "war room" and the army declared a "Red Alert" in Bolivia, the

equivalent of a state of war against enemy combatants. *Id.* at 6-7. At that time,

and throughout the killings that followed, Defendants repeatedly labeled civilian

protestors as armed insurgents and subversives, despite knowing that there was no

armed insurgency in Bolivia and that their repeated references to the need to use

military force against an armed uprising were false. *Id.* at 7, 8, 9, 11-12.

On September 20, the killings at issue in this lawsuit began. Defendants

4

were personally involved in supervising and implementing the military operations

on that day and were in telephone contact with each other throughout the day. *Id.*

at 7-8. During an operation ostensibly aimed at clearing roadblocks and escorting

foreigners who were stranded behind the roadblocks, the military repeatedly shot at

villagers in their homes and fields and as they ran for safety. *Id*. at 7. An officer

gave the order to shoot "at anything that moved." *Id*. at 8. Shortly afterwards, and

as part of the Defendants' military operation, eight-year-old Marlene Rojas, the

daughter of Plaintiffs Eloy and Etelvina Ramos Mamani, was shot and killed as she

moved to look out a window in her home, far from the site of any protests. *Id.*

Defendant Lozada took full responsibility for the military's actions that day and

falsely blamed the violence on "subversives." *Id.*[2]

Over the next few weeks, Defendants rebuffed repeated efforts by

government colleagues, community leaders, and religious figures who expressed

concern about civilian bloodshed and sought a peaceful resolution. *Id.* at 8-9.

Instead, Defendants authorized continued military force against civilians, under the

knowingly false claim that they were fighting subversion. *Id.*

On October 12, dozens of civilians were killed in El Alto when military

officers operating under Defendants' command ordered soldiers to shoot civilians,

---

[2] The killings were widely reported in the media and were criticized by the Vice
President at a Cabinet meeting the evening of September 20. Plaintiffs' Second
Amended Consolidated Complaint (Exhibit 1 to Opposition) at ¶¶ 81-83. Dozens
more civilians were killed over the next several weeks. *Id.* at ¶¶ 87-102.

5

and sharpshooters targeted civilians in residential neighborhoods without justification. *Id.* at 9. Four of Plaintiffs' relatives were killed by the military on that day, none of whom was involved in demonstrations or posed any threat to the military. *Id.* The following day, in an effort to block protesters from entering La Paz, Defendants sent military units south of the city, where they were ordered to "shoot at any head that you see." *Id.* at 10. Defendant Berzain was personally present and issuing orders while soldiers fired at people cowering for cover or trying to flee. *Id.* at 10-11. Three of Plaintiffs' relatives were among the seven civilians killed on that day as part of the coordinated military operation. *Id.* at 11.

In response to escalating civilian deaths and injuries, top government officials again criticized the mounting civilian death toll. *Id.* Defendants responded by vowing to maintain their policies and commended the military for strictly following Defendants' orders. *Id.* at 11-12. On October 17, however, after the U.S. Embassy withdrew its support for their government, Defendants resigned and fled immediately to the United States, where they have remained. *Id.* at 12.[3]

After the massacres, the Bolivian government offered humanitarian assistance to the families of those killed by the armed forces. *Id.* at 25. Plaintiffs participated in that program. In 2008, the government made available additional

_____

[3] After Defendants fled Bolivia, the Bolivian government indicted them and fifteen other high-level government officials. Compl. at ¶ 169. However, Bolivia does not permit trials in absentia. *Id.* at ¶ 171. The remaining criminal defendants were convicted of the crime of genocide through mass killings. *Id.* at ¶ 170.

6

assistance. *Id.* In 2009, pursuant to the TVPA's requirement that plaintiffs exhaust remedies where the abuses occurred, then-District Court Judge Jordan ordered Plaintiffs to exhaust that remedy, but explicitly declined to decide whether those payments would preclude this lawsuit. *Id*. at 25-26. Plaintiffs thereafter obtained additional assistance pursuant to the second government program.

### B.    Procedural Posture

Plaintiffs filed the original Complaints in this case in 2007 and 2008, shortly after the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007), but before the Court decided *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and made clear that the *Twombly* standard applied to all civil complaints. In 2009, Judge Jordan denied in part Defendants' motion to dismiss the then-operative Complaint for failure to state a claim, finding plausible allegations that Defendants bore responsibility for the targeted killings. Defendants appealed as of right Judge Jordan's denial of their claim to immunity, and this Court granted permission to appeal additional issues. This Court then reversed the denial of the motion to dismiss for failure to state a claim. *Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011). Applying the *Iqbal* standard, the Court held that Plaintiffs had not alleged a specific factual connection between the deaths of their family members and Defendants' actions. *Id*. at 1153.

On remand, Plaintiffs filed the currently pending Complaint, which includes

7

an enormous amount of additional factual allegations that specifically link the

Defendants to the intentional killing of Plaintiffs' family members. Judge Cohn

held that Plaintiffs had stated a plausible claim of extrajudicial killing under the

TVPA.[4] Analyzing Plaintiffs' detailed allegations based on the two-step approach

this Court used in reviewing the earlier Complaint, Judge Cohn carefully

considered first whether "the non-conclusory factual allegations . . . plausibly

suggest that Plaintiffs' relatives' deaths were extrajudicial killings," and second

whether those allegations "plausibly suggest that Defendants are secondarily liable

for the killings." Order at 32.

Judge Cohn first held that the Complaint gave rise to a "reasonable

inference" that military sharpshooters "deliberately" killed each of the decedents

and that the deaths constituted extrajudicial killings. Order at 33-34. Second,

Judge Cohn applied the doctrine of command responsibility,[5] analyzing the three

elements detailed in *Ford v. Garcia* and in the TVPA legislative report, S. Rep.

102-249, at 9 (1991). Order at 34-40. Judge Cohn held that the Complaint alleged

facts plausibly showing that: (1) as the Bolivian military's highest commanders,

Defendants had ultimate authority and effective control over that military, *id*. at

---

[4] Judge Cohn dismissed Plaintiffs' claims under the Alien Tort Statute. Order at 15-16 (holding ATS claims barred by *Kiobel v. Royal Dutch Petroleum Co*., 133 S. Ct. 1659 (2013)). Plaintiffs did not seek interlocutory appeal of that ruling.

[5] Having found that the Complaint plausibly alleged command responsibility, Judge Cohn did not reach Plaintiffs' allegation that Defendants were liable under agency and conspiracy theories. Order at 35 n.22.

8

36-37; (2) Defendants had knowledge of the extrajudicial killings, which were part of Defendants' own plan to use lethal force to quell opposition to their political agenda, *id*. at 37-39; and (3) Defendants failed to act to prevent the extrajudicial killings or to punish the soldiers afterwards.  The Court relied on allegations that Defendants "direct[ed] the violent military campaign that led to Plaintiffs' relatives' deaths," "repeatedly ignored pleas to find peaceful solutions," "praised the military for its operations," "accepted full responsibility for the resulting violence," and, after the initial deaths, "authorized further military operations . . . resulting in even more civilian deaths." *Id*. at 39.

    Judge Cohn also rejected Defendants' argument that the TVPA claims were precluded by the humanitarian assistance payments from the Bolivian government. After analyzing the TVPA's text and legislative history, international law, and domestic tort law, Judge Cohn held that Defendants had not met their burden of showing that this assistance barred the TVPA claims.  Judge Cohn emphasized that the TVPA was designed to hold *individuals* accountable for their actions, and noted that as long as the Defendants are in the United States, they cannot be subjected to civil or criminal liability in Bolivia in absentia. *Id*. at 26-28.  Judge Cohn determined that "it would be absurd to conclude that Defendants could avoid liability for their alleged wrongs merely because the Bolivian government saw fit to render some humanitarian assistance to Plaintiffs." *Id*. at 29.

Defendants filed a motion for certification for interlocutory appeal. Judge Cohn granted the motion on August 18, 2014, and certified two narrow issues: first, "whether receiving any compensation at all from the Bolivian government precludes [Plaintiffs] from holding Defendants liable under the TVPA," Cert. Order at 5 (Tab A to Defendants' Petition), and second, "what type of facts are necessary to satisfy these two elements [knowledge and failure to prevent or punish] of the command responsibility doctrine," *id.* at 7.

## ARGUMENT

There is a "strong presumption against interlocutory appeals."[6] *United States v. One Parcel of Real Prop. With Bldgs., Appurtenances & Improvements*, 767 F.2d 1495, 1498 (11th Cir. 1985). Section 1292(b) "sets a high threshold for certification to prevent piecemeal appeals," and "[m]ost interlocutory orders do not meet [the] test." *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1358-59 (11th Cir. 2008); *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004). The party seeking review bears the burden of establishing "that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978). Cases that meet this exacting

---

[6] Certification is appropriate only when: (1) the order "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

standard for certification are "hen's-teeth rare." *Camacho v. P.R. Ports Auth.*, 369

F.3d 570, 573 (1st Cir. 2004). This case is not one of them.

## I. THE ISSUE OF COMMAND RESPONSIBILITY IS INAPPROPRIATE FOR INTERLOCUTORY REVIEW BECAUSE IT ADDRESSES THE APPLICATION OF SETTLED LAW TO FACT

Defendants claim that the law defining command responsibility is not clear.

However, this case does not rely on unresolved fine points of the command

responsibility doctrine, but rather on settled Eleventh Circuit case law defining

command responsibility. The law is clear that a commander is responsible for

unlawful killings committed by subordinates when the following elements are met:

> (1) the existence of a superior-subordinate relationship
> between the commander and the perpetrator of the crime;
> (2) that the commander knew or should have known,
> owing to the circumstances at the time, that his
> subordinates had committed, were committing, or
> planned to commit acts violative of the law of war; and
> (3) that the commander failed to prevent the commission
> of the crimes, or failed to punish the subordinates after
> the commission of the crimes.

*Ford,* 289 F.3d at 1288.[7] The Complaint alleges specific facts that plausibly state

that Defendants' conduct meets this standard. Defendants challenge the application

of this settled law to the facts of this case, but not the substance of the rule.

---

[7] Although Defendants suggest that the doctrine is inapplicable because Defendants were civilians, the court below found that Defendants "were the highest commanders of the Bolivian military" and had "*de jure* authority over the soldiers who fired the fatal shots." Order at 36. *See Hilao v. Estate of Marcos*, 103 F.3d 767, 777-78 (9th Cir. 1996) (holding former Philippines president liable under

11

Defendants seek to create a substantive disagreement by contending that the standard for the second element, the knowledge requirement, is unclear because the Rome Statute of the International Criminal Court "permits liability only against civilian officials who 'knew[] or consciously disregarded' unlawful acts, whereas military officials can be liable as long as they 'knew or . . . should have known' of unlawful acts." Pet. at 16. Defendants did not raise this legal argument in their motion to dismiss or their certification petition to the District Court. For that reason alone, it should not be considered on appeal. *See Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) ("an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court") (internal quotation omitted); *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 n. 22 (11th Cir. 2004) (motion for interlocutory review may not be used to inject new arguments into the underlying motion).

Moreover, the alleged uncertainty is irrelevant, given that, as the District Court found, the Complaint clearly alleges facts that meet either standard of the knowledge element. Order at 17-18. The District Court found plausible the detailed factual allegations that Defendants entered into an agreement to use lethal force to suppress opposition to their program, intended to kill as many as 3,000 Bolivian civilians, issued orders to the armed forces to carry out their plan, closely

command responsibility doctrine); *see also Paul v. Avril*, 812 F. Supp. 207, 211 (S.D. Fla. 1993) (applying doctrine to former head of state of Haiti).

12

supervised implementation of their plan, and praised military operations in which

dozens of civilians were killed. The District Court correctly held that these detailed

factual allegations support the reasonable inference that Defendants *knew* that the

military under their command was engaged in unlawful killings of civilians,

exactly as the Defendants intended and planned.  The issue here is the application

of the knowledge element to these facts, not the content of the rule of law.

The District Court's certification order merely quotes Defendants' counter

narrative of the facts, which asserted that Plaintiffs failed to "allege that

Defendants knew that nonviolent civilians unrelated to the uprising or who had

been caught in the crossfire had died."  Cert. Order at 7, quoting Def. Mot. at 16.

In denying the Defendants' motion, however, the District Court found sufficient

allegations of knowledge based on the reasonable inferences of the Complaint.

The question of Defendants' knowledge, once again, addresses the application of

settled law to fact.[8]

_____

[8] Defendants erroneously claim that Plaintiffs "nowhere" allege that Defendants
knew or should have known that innocent civilians had been killed illegally. Pet.
at 17. To the contrary, the Complaint specifically alleges that "Defendants knew
that the members of the Armed Forces had committed and were about to commit
extrajudicial killings . . . and wrongful deaths," ¶ 185; that each of the decedents
was killed as a result of Defendants' unlawful plan to kill unarmed civilians, ¶¶
203, 207; and that Defendants "wrongfully and intentionally ordered military
personnel to use deadly force against the unarmed Decedents, who posed no threat
to Defendants, Bolivian military personnel or others," ¶ 216.

13

On the third element of command responsibility, failure to act, Defendants assert that they had insufficient time to investigate the civilian deaths that occurred on October 13 and 14. Pet. at 17. However, whether Defendants had time to prevent or punish the killings is a question of fact. And they certainly had time to *prevent* those killings, which occurred weeks after widespread civilian killings had been widely reported and multiple people in and outside the government had urged them to stop the killings. As the District Court noted, "Instead of investigating or punishing the death of the eight-year-old girl in Warisata, for example, Defendants praised the military for its operations and accepted full responsibility for the resulting violence." Order at 39.[9]

Finally, resolution of the factual issues underlying the application of command responsibility to this case will not materially advance this litigation because Plaintiffs also asserted two additional theories of liability: agency and conspiracy. Order at 35 n.22.

---

[9] The District Court acknowledged that the command responsibility issue "necessarily involves the application of 'law to the particular facts of a pleading in a specific case.'" Cert. Order at 6 n.3, quoting *McFarlin*, 381 F.3d at 1262. The decision to certify the issue seems to rest in large part on the fact that the TVPA preclusion issue had been certified. *Id.* (given that "this Court has already found one issue proper for certification, the Eleventh Circuit may review this and any other issue raised in the May 20, 2014 Order") (citations omitted). But the certification of one issue does not render another issue an appropriate subject for interlocutory appeal. In an earlier stage of this case, for example, when this Court granted permission for an interlocutory appeal of some issues, the Court declined to certify appeal of the act of state doctrine "because it [was] not one of pure law." Order Granting Permission to Appeal, No. 10-90012-F (11th Cir. July 8, 2010).

14

## II.    THE EXHAUSTION QUESTION IS INAPPROPRIATE FOR INTERLOCUTORY REVIEW BECAUSE THERE IS NO SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

Defendants urge this Court to grant interlocutory review on whether humanitarian assistance from the Bolivian government precludes a TVPA suit for damages from the individuals allegedly responsible for the underlying abuses, simply because it is an issue of first impression. Pet. At 12. But an issue of first impression decided in a well-reasoned and comprehensive District Court opinion is not appropriate for interlocutory review, because there is no substantial ground for difference of opinion as to its outcome.

It is well-established that "the mere existence of a question of first impression does not overcome the strong presumption against section 1292(b) certification." *In re Checking Account Overdraft Litig.*, No. 09-MD-02036-JLK, 2010 WL 3377592, at *3 (S.D. Fla. July 1, 2010); *accord Rindfleisch v. Gentiva Health Services, Inc.*, — F. Supp. 2d —, 2013 WL 8541675, at *4 n.5 (N.D. Ga. Nov. 4, 2013) (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)). To obtain interlocutory review, a movant must normally "demonstrate that at least two courts interpret the relevant legal principle differently." *In re Pac. Forest Products Corp.*, 335 B.R. 910, 922 (S.D. Fla. 2005); *accord In re Celotex Corp.*, No. 8:90-bk-10016-PMG, 2010 WL 2871075, at *2 (M.D. Fla. July 20, 2010); *Smith v. Laddin*, 424 B.R. 529, 535 (N.D. Ala. 2010). Defendants cannot overcome this

high bar. The District Court certified a very narrow question: "the issue presented for certification is not whether the Plaintiffs received adequate compensation, but rather whether receiving *any* compensation at all from the Bolivian government precludes them from holding Defendants liable under the TVPA." Cert. Order at 5 (emphasis added). As to that narrow issue of law, not only is there no conflicting precedent from any court in any circuit, but Judge Cohn's Order persuasively demonstrates that there is no substantial ground for a difference of opinion. Indeed, Defendants fail to identify any precedent, either within or outside this Circuit, that shows substantial ground for dispute regarding this exhaustion issue.

The cases from this Court cited by Defendants involved issues of first impression in the Eleventh Circuit about which there was conflicting authority in other circuits. *See Laperriere v. Vesta Ins. Group, Inc.,* 526 F.3d 715 (11th Cir. 2008) (describing contrary interpretations by sister circuits); *Adams v. Florida Power Corp.*, 255 F.3d 1322, 1324-25 (11th Cir. 2001). Indeed, in *In re Miedzianowski,* 735 F.3d 383, 384 (6th Cir. 2013), the court rejected certification because there was no split within districts courts in that Circuit. Here, Defendants point to no court that has found that assistance to plaintiffs from third parties precludes remedies from a defendant tortfeasor.

At bottom, Defendants simply disagree with the outcome below and contend that the case presents a novel question. This does not meet Defendants' "burden of

16

proving that this is an 'exceptional case' where a substantial difference of opinion exists." *Trauner v. State Bank & Trust Co.*, No. 1:12-cv-03761-JEC, 2013 WL 5350611, at *4-5 (N.D. Ga. Sept. 23, 2013). "It is simply not enough for interlocutory review that the order for which appeal is sought presents a difficult ruling; nor is it sufficient that the movant can demonstrate a lack of authority on the issue." *Pac. Forest*, 335 B.R. at 922.

The District Court's careful examination of the TVPA's text and legislative history, as well as general principles of international and U.S. law, led clearly to the conclusion that Plaintiffs' claims are not barred here and demonstrates the lack of any substantial ground for difference of opinion on that question.

First, as to the statutory text, section 2(a) creates specific *individual* liability for damages, providing that "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation" subjects someone "to extrajudicial killing shall, in a civil action, be liable for damages." 28 U.S.C. § 1350 note, § 2(a). On its face, the TVPA's very purpose is to redress wrongdoing by specific individuals by ensuring that their actions have legal consequences, rather than simply to establish a means of relief for the victim.

Second, legislative history reinforces this view. The purpose of the statute was to ensure that human rights abusers have no "safe haven" in the United States and are "held legally accountable for their acts." S. Rep. 102-249, at 3 (1991).

17

Third, with respect to exhaustion of local remedies, customary international law prescribes that before resorting to an international court, "the State where the violation occurred should have an opportunity to redress it by its own means, within the framework of its own domestic legal system." *Interhandel (Switzerland v. United States)*, 1959 I.C.J. 6, 27 (March 21). Here, Defendants fled Bolivia and have no intention to return, and Bolivian law prohibits trials in absentia. Thus, barring extradition, Bolivia will not be able to address the allegations against these two individuals, who can only be held accountable in the United States.

Fourth, domestic legal principles lead to the same conclusion. For example, the concept of exhaustion of remedies typically does not preclude judicial relief, but rather postpones it until alternate remedies have been exhausted. *See, e.g., Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006); W. Casto, *The New Federal Common Law of Tort Remedies for Violations of International Law*, 37 Rutgers L. J. 635, 660 (Spring 2006). Further, under the collateral source rule, compensation that a plaintiff receives for a loss from a collateral source is not credited against the defendant's liability for damages, precisely to ensure that wrongdoers are held accountable for their actions. *See* 74 Am. Jur. 2d *Torts* § 2 (2014). Applying this same principle here, Defendants cannot escape liability merely because the Bolivian government provided some humanitarian assistance to Plaintiffs.

On top of this comprehensive analysis, the District Court recognized that Defendants bear the "substantial" burden of persuasion on the exhaustion defense. *Jean v. Dorelien*, 431 F.3d 776, 781 (11th Cir. 2005). Thus, even if the issue presented a close call, any doubt must be resolved in Plaintiffs' favor. Order at 31.

Defendants' Petition goes beyond the issue certified by the District Court and introduces a clear question of fact. Defendants ask this Court to consider whether humanitarian assistance received by Plaintiffs from the Bolivian government is sufficiently "adequate" to preclude Defendants' liability under the TVPA.[10] Such an inquiry is not a simple matter of statutory interpretation. Rather, evaluating the adequacy of Plaintiffs' assistance will require this Court to delve into details about two prior compensation regimes established by the Bolivian government, and to determine whether those payments were "adequate" or "sufficient" in light of the injuries suffered by Plaintiffs and the culpability of Defendants. For the same reasons it rejected section 1292(b) review in *Amos v. Glynn County Board of Tax Assessors,* the Court should decline review here. In *Amos*, the defendant moved to dismiss the complaint citing the Tax Injunction Act, which precludes lawsuits in federal court that seek to restrain the assessment of a state tax "where a plain, speedy and efficient remedy may be had in the courts of

---

[10] Defendants wrongly state that Plaintiffs did not dispute the adequacy of the payments. Pet. at 11. Plaintiffs have consistently insisted that the payments received do not compensate them for injuries they suffered and that third party payments are not a remedy against these Defendants for the harms they inflicted.

such State." 347 F.3d 1249, 1254 (11th Cir. 2003) (quoting 28 U.S.C. § 1341), *abrogated on other grounds by Nicholson v. Shafe*, 558 F.3d 1266 (11th Cir. 2009). After the district court denied the motion, the Eleventh Circuit denied the defendants' section 1292 petition, finding that "reviewing the . . . state remedy to determine whether it was 'plain, speedy, and efficient' was too fact-intensive an inquiry for interlocutory review under § 1292(b)." *Id.* Assessing the sufficiency of Plaintiffs' Bolivian remedies would be at least as fact-intensive.

Finally, Defendants' petition for certification should be denied for the additional reason that it would not materially advance the litigation. A decision on the narrow exhaustion issue certified by the District Court would still require this Court to remand the case for a ruling on whether Plaintiffs' humanitarian aid was sufficiently "substantial" or "adequate," an issue not reached by the District Court.

## CONCLUSION

For the reasons stated above, Defendants' petition for certification under 28 U.S.C. § 1292(b) should be denied.

Respectfully submitted,

Dated: September 11, 2014        By___ */s/ Michael C. Small* _____
                                            Michael C. Small

20

Michael C. Small
Jeremy F. Bollinger
Jonathan P. Slowik
**AKIN GUMP STRAUSS HAUER &
FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA  90067
Tel:  (310) 229-1000

Judith Brown Chomsky
**CENTER FOR CONSTITUTIONAL
RIGHTS**
Post Office Box 29726
Elkins Park, PA  19027
Tel:  (215) 782-8367

David Rudovsky
**KAIRYS, RUDOVSKY, MESSING &
FEINBERG LLP**
718 Arch Street, Suite 501 South
Philadelphia, PA 19016
Tel: (215) 925-4400

Tyler R. Giannini
Susan H. Farbstein
**INTERNATIONAL HUMAN
RIGHTS CLINIC**
Harvard Law School
6 Everett Street, Third Floor
Cambridge, MA 02138
Tel: (617) 495-9362

Attorneys for Plaintiffs-Respondents
**ELOY ROYAS MAMANI, ET AL.**

Steven H. Schulman
**AKIN GUMP STRAUSS HAUER &
FELD LLP**
Robert S. Strauss Building
1333 New Hampshire Avenue NW
Washington, DC 20036
Tel:  (202) 887-4000

Beth Stephens
**CENTER FOR CONSTITUTIONAL
RIGHTS**
666 Broadway, 7th Floor
New York, NY 10012
Tel:   (212) 614-6431

Paul Hoffman
**SCHONBRUN, DE SIMONE,
SEPLOW,
HARRIS & HOFFMAN, LLP**
723 Ocean Front Walk
Venice, CA 90201
Tel: (310) 396-0731

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.

Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid to the following non-CM/ECF participants:

Ana C. Reyes
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC  20005

Kristin A. Shapiro
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC  20005

Greg S. Hillson
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC  20005

Executed on September 11, 2014, at Los Angeles, California.

By    /s/ *Michael C. Small*
        Michael C. Small